NICHOLAS MARC

*v.*

HERMAN KUPFER.

1. CURRENT FUNDS — *what they are.* A draft drawn, payable in "current funds," can only be paid, if not in legal tender money, in par funds, or money circulating without discount.

2. SAME — *its meaning cannot be restricted by proof.* The term "current funds,' has a well defined specific meaning, well understood, and that meaning cannot be altered or changed by proof that it has acquired a local signification.

APPEAL from the Circuit Court of La Salle county; the Hon. M. E. HOLISTER, Judge, presiding.

This was an action of assumpsit, commenced in the County Court of La Salle, by Herman Kupfer against Nicholas Marc, on the indorsement of this bill of exchange:

PERU, ILL., *May* 16*th*, 1861.

At sight of this my first of exchange (second unpaid), pay to the order of R. G. Parks, Esq., $305 $\frac{21}{100}$ dollars, in funds current to-day, value received, and charge to account of

NICL. MARC.

HOFFMAN & GELPCKE, Chicago, Ill.

On the back of which there were the following indorsements:
"Pay H. Kupfer or order.

"R. G. PARKS."

"Pay to H. Harbleck or order.

"H. KUPFER."

The declaration also contained the common money counts, but they were subsequently *non prossed.* The cause was transferred to the Circuit Court of La Salle county by a change of venue.

The defendant filed the general issue and two special pleas, the first as follows:

And for a further plea in this behalf, the said defendant, as to the *first* count of said declaration, says, *actio non,* because he says, the words "funds current" in the said instrument in writing, in said first count mentioned, had a local signification at the place where said instrument was drawn, to wit, at Peru, in this State, and at the place where the same was so by its terms made payable, to wit, at Chicago, in this State, and generally throughout the State of Illinois, among banks and business men, and was so generally and universally understood to mean such bank notes of banks in the State of Illinois as were then in general circulation in the State of Illinois, and which were then greatly below par, or their nominal value, and fluctu-

ating in value from day to day, all of which was well known to the said plaintiff at the time of the receipt of said instrument by him, and understood by the drawer, drawees and payee of said bill at the time of the making thereof, and wherefore said instrument was not in fact payable in lawful funds ; and this the said defendant is ready to verify, and wherefore he prays judgment, &c."

2. Special plea that at the time of drawing the bill, defendant had on deposit with the drawees funds sufficient to pay the same, but intermediate with that time and its presentation by the holder, the drawees, Hoffman & Gelpcke failed and became insolvent, and that in consequence of the want of diligence on the part of the holder in presenting said bill to the drawees, the money deposited for its payment became and was utterly lost to the defendant.

The defendant below filed a general replication without specifying to what plea the same was filed, but traversing the matters in discharge set forth in the third plea and the plaintiff below also filed a general demurrer to the defendant's third plea.

On the same day an order was entered by the court sustaining the plaintiff's demurrer to the defendant's *second plea.*

A trial was had by the court without the intervention of a jury, by consent of the parties; and on the trial the court below permitted the plaintiff to strike out the last indorsement and read the bill and first indorsement in evidence. Plaintiff proved by Alexander Siller that, as notary public, he presented the bill for payment to Hoffman & Gelpcke, at their banking house, and, as instructed by plaintiff, demanded payment thereof, in such bank notes as were received as current by the Merchants' Saving, Loan and Trust Company; but payment was offered in Illinois bank notes, current at most of the banks in Chicago at the date of the draft. The demand of payment was made, and protest entered on the 22d of May, 1861 ; and it appeared that after the 18th of that month, the notes of Illinois banks ceased to be a circulating medium, but were, for about a week after, received by the banks, and were considered

worth about from seventy to seventy-five cents on the dollar, in specie, from the date of the draft until presented. After hearing all of the evidence, the court found the issues for the plaintiff, and assessed his damages at $341 $\frac{81}{100}$. Defendant thereupon entered a motion for a new trial, which was overruled, and judgment rendered, for that sum, against the defendant. To reverse this judgment he prosecutes this appeal, and assigns for error: that the court permitted the instrument described in the declaration to be read in evidence; in finding the issues for, and in rendering judgment in favor of plaintiff.

Mr. G. S. ELDRIDGE, for the appellant.

1. The judgment is erroneous, and should be reversed, because no issue was taken upon the defendant's *second* plea, and judgment was rendered against. the defendant upon the demurrer as to the *second* plea, whereas the demurrer was to the *third* plea.

2. The defendant's replication is general, but in fact traverses the matters set forth in the *third* plea, and to which *same plea* the demurrer was interposed, leaving the second plea *entirely* unanswered.

3. The demand of payment was insufficient. The notary's certificate was *offered* but *not received* in evidence, and even if it had been, it could not have been considered as legal evidence, either of a demand or of notice of non-payment; the instrument offered, if negotiable at all, being an inland bill of exchange. Bayl. on Bills, 526; 1 Gilm. 24.

4. It entirely failed to show a legal demand; the demand should have been an *unconditional one for payment in money*, whereas Siller states that, as the plaintiff's agent, he was instructed to, and did, demand payment in such bank notes as were received on deposit by the Merchants' Savings, Loan and Trust Company. He might as well have demanded a horse or payment in corn, or any other article or commodity. The drawer, if this instrument is to be considered a bill of exchange,

19— 34TH ILL.

could only be held upon a *refusal to comply with an uncon-ditional demand of payment* in money, and whatever trans-pired between the witness and drawees, as to receiving this or that kind of bank notes, could not prejudice the rights of the drawer. Chitty on Bills, 368.

The statement of Siller furnished no legal evidence that the bill was *duly* protested, and *due* notice thereof given to the drawer. Those are questions of *law* to be determined from the *facts*, and not from the witness' *views* of the legality of his acts.

It was competent to plead and show that the words "*funds current to-day*" did not mean legal currency of the country, but had a local signification, and meant simply bank notes of this State, which were then depreciated below their nominal value, and might still further depreciate. See opinion of Chief Justice Caton in this case at a former term, 28 Ill. 391.

The legal title to the instrument, if negotiable at all, was not in the plaintiff at the time of the commencement of the suit.

Messrs. Leland & Blanchard, for the appellee.

1. The replication marked on the back as one to the second plea, is apparently one to the third plea, and should have been so labelled. We do not think the mistake a fatal one, because the identity of the replication is made out so clearly by the subject matter, that it leaves no reason for doubt. It con-vinces the other side that the numbering is wrong.

2. It is complained that a demurrer was sustained to the second plea, when none was filed. There was none filed, unless it is apparent that the demurrer to the third was really one to the second. The inference that this is so is very strong, and we think strong enough to show that the plea called the third was really the second.

But is the defendant prejudiced by the omission to file a written demurrer? His attorney appeared and argued a demur-rer to second plea and abided by the decision of the judge

Marc *v.* Kupfer.

below, and he ought to abide by it here, whether it was an oral or written demurrer. Parties may consent to a demurrer, in short, this may be considered one of that kind. *Merriwether* v. *Gregory*, 2 Scam. 52; *Merriwether* v. *Smith*, id. 31.

3. Under the authority of the case of the *Galena Ins. Co.* v. *Kupfer*, 28 Ill. 332, the second plea would seem to be clearly bad. This last case answers the query in the opinion of Judge CATON, in *Kupfer* v. *Marc*, id. 391.

4. The evidence of demand of payment is said to be insufficient, and it is also said that the certificate of the notary, though offered in evidence, was not received in evidence.

If the notarial certificate was not received in evidence its introduction as evidence cannot be complained of, of course. If it was admitted then, though secondary evidence, its admission was not an error, because there was no objection because the evidence was secondary. The evidence of the witness, Siller, was sufficient to prove demand and refusal to pay.

The request for the kind of currency that would go at the Merchants' Saving, Loan and Trust Co. was a designation of the kind which the holders of the draft considered current funds, but the drawees had different ideas as to what were current. It was the offer by drawee to pay in bank paper, which was under par and not current, and the refusal of the drawee to pay par funds when an opportunity was offered him to do so, which makes the neglect to pay, which, with the notice thereof to the drawer, fixes the liability of the latter to the holder. A sending notice by mail on the day of presentation and refusal to honor on presentation is due notice.

The right of the holder of negotiable paper, who has taken it up from one to whom he has negotiated it, to strike out the name of his own indorsement is too well settled to require comment.

5. If the demurrer was properly sustained to second plea the third plea was answered, for there is no other plea that requires a special replication.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The record recites, that a replication was filed to the third plea, and also a demurrer to the same plea, and the judgment of the court was that the demurrer be sustained to the second plea. It is obvious, that the demurrer was substantially to the second plea. It is true that the demurrer states that defendant's plea, thirdly above pleaded, is insufficient in law to bar plaintiff's action, but in the transcript of the record it follows the replication. And the judgment is upon the sufficiency of the second plea. We are of the opinion, that the second plea not being otherwise answered, it is fair to presume the demurrer was understood by the parties and the court to apply to the second plea, otherwise the judgment would not have been rendered upon that plea.

The question then arises whether the plea presented a defense to the action. The draft was drawn at sight, for three hundred and five dollars and twenty-one cents, in funds current on the day of its date, for value received. The plea set up as a defense, that the term "current funds" had a local meaning at the place where the draft was payable, and was understood, there and throughout this State, to mean such bank notes, of the banks in Illinois, as were then in circulation, and which were then greatly below par, or their nominal value, fluctuating in value from day to day, which was known to, and understood, by the parties, wherefore the instrument was not payable in lawful funds. It has been repeatedly held by this court, and is regarded as the settled doctrine, that the terms "currency" and "current funds" have a specific, legal and well known meaning, that cannot be contradicted or explained.

In the case of the *Galena Ins. Co.* v. *Kupfer*, 28 Ill. 332, it was held, that on a check for current funds, the holder might demand in payment, current money, par funds, or money circulating without any discount. This check called for par funds, and it could not be paid by depreciated bank paper.

In that case it was also held, that the term "current funds" had a well defined specific meaning well understood by all classes of business men. And that extrinsic evidence could not be received to alter, change, or in anywise vary its meaning.

That case is in point, and is conclusive of this question. The court below, therefore, committed no error in sustaining the demurrer to this plea. The demand of payment of the draft was sufficient, and the notice of non-payment was good to bind the drawer in an action for the recovery of the amount of the draft.

The judgment of the court below must be affirmed.

*Judgment affirmed.*